And our last case to be argued on the substantive motions calendar is Apostolos Manguras against Squire Patton Boggs. There are two other cases that are on submission, Martin Cerros Ramon versus Jefferson B. Sessions III and Richard Benham et al. versus Sony BMG Music. Those are on submission. We're informed that by the clerk that counsel for Apostolos Manguras has not signed in. Well, who are you, as it were? Okay. Tisdale signed in for his, okay. This is very crowded, your honor, coming in, as you know. Your honor, may it please the court. Your name, what would please the court would be to have your name. Yes, it is Victor Jennison. It's the first name on our motion submission. Go ahead. And your honor, I've been asked by the Spanish government to state that the Kingdom of Spain is deeply concerned about the district court's lack of attention to Spain's professional secrecy laws and has asked me to express its appreciation to this court for its consideration of the motion for a stay. Nominally, your honor, the appellants in this case are a lawyer and law firm and a naval architect and naval architecture firm, but the true target of these 1782 proceedings is the Kingdom of Spain, which engaged the lawyers and through the lawyers engaged the naval architects to represent Spain in proceedings in Spain and in New York. And we must emphasize that the work of the New York lawyers and New York experts was performed in support of Spanish criminal proceedings against the appellee, his employer, and others, and of proceedings in the Southern District of New York against the American Bureau of Shipping. The documents and testimony that are sought here are recognized under both Spanish law and New York law to be the property of the client, that is the Kingdom of Spain, and the disclosures that the district court has ordered will irreparably harm the interest of the Kingdom of Spain and the preservation of professional secrecy under its laws. Are you asserting that the material that will be, that has been requested, is privileged? Yes, we are, your honor. All of the material that has been requested is subject to Spanish professional secrecy law, and in that connection we have submitted letters from the government of Spain to the district court requesting the discovery not be granted and presenting a detailed discussion of this issue, which is an issue of Spanish law under the constitution, the statutes, the regulations, and the decisional law of the courts of Spain. I saw a reference in the materials, which I've read carefully, but I am confused about one aspect of this. There is reference to a privileged log before the district court. Is there a process that the district court is contemplating about looking at material item by item? What the district court has done is to direct us, and it did this actually back in 2013 when this case was originally before it, to review the paper documents and to designate those items that we consider to be privileged under U.S. law, and the privilege log that we submitted to the district court for review is a privilege log of items that are privileged under U.S. law, but what the next step is that the court intends to take on that after review, the district court has not told us. The scope of the Spanish privilege, however, is a great deal broader. The scope of the Spanish privilege, in fact, covers everything that is in the lawyer's know. And that's established how on the record? That is established through the submissions made by the government of Spain, which are detailed submissions. One attorney for Spain, an affidavit submitted, I think, and there was some dispute, I think, from other parties about the scope of there in black and white for all to see, but I'm not quite so sure it's that clear. In terms of the submissions that have been made by us, there are two kinds of submissions that we've made. We've made submissions by the government of Spain, which has addressed the issues of Spanish law in detail with citation to statutes and case law, and we have submitted as well an affirmation by a Spanish professor of Spanish law that is to the same effect. Well, and I guess a follow-up to that is, I mean, my understanding is these documents were produced in connection with litigation brought by the kingdom of Spain in New York and pursued in the southern district here. It's not clear to me why Spanish law would govern the question of privilege. Well, because these documents are now being sought, not in connection with that litigation that was in New York, but rather pursuant to 1782 for purposes of a lawsuit that has not yet been brought in Spain that the petitioner seeks to bring in Spain. And so the question of whether the Spanish privilege applies is really properly one under Intel, which views applicable privilege as a threshold issue. And under this court's precedent in animal science, which speaks to the deference that is owed to a foreign government when it addresses issues of its own law in the U.S. courts, the issue of privilege is one to be determined in the first instance by the Spanish court. All they have to show is that it's going to be used for use in a foreign proceeding. There are two such foreign proceedings on the horizon, and those documents were generated in New York in connection with proceedings in New York. Once again, I don't really understand why Spanish law would control. Well, a thing that I think we should emphasize here is that they were generated in a variety of places in the world. The documents happen to be in New York, but they were generated in a variety of places in the world in connection with proceedings that were ongoing in Spain as well as in connection with proceedings that were taking place in New York. So it is not accurate to say that these are documents that came into existence with only a New York proceeding in mind. The witnesses, all of them, testified in the Spanish proceeding. The issues were issues that were confronted in the Spanish proceeding, and we're in a position today where what is sought is information, on the one hand, supposedly for use in a proceeding in the European Court of Human Rights, where the rules explicitly forbid any new evidence in the context of review taken by the European Court of ... It's also a Spanish proceeding. Well, Your Honor, there isn't a Spanish proceeding. There is a theoretical proposed Spanish proceeding. Contemplated. Yeah. Well, the question whether it's contemplated is actually an interesting question. The appellee's position is internally contradictory. On the one hand, he says that he has enough. He said repeatedly that he has enough information to file a cuerea criminal, a Spanish proceeding. On the other hand, he says that he needs the documents that we have in order either to support the case that he already has or to convince himself that he doesn't need to bother filing in Spain. So on those facts, if he's already got enough, then there's no reason for him not to simply file his cuerea criminal. Mr. Janison. Yes. I've given you extra time, but I'd like to ... What do you want from us? What's the decision relief, remedy? What do you want us to do? We want a stay of proceedings in the district court pending your decision on appeal. Okay. Thank you. Thank you. Mr. Steele. Thank you, Your Honor. A better response and a more accurate response to Your Honor's last question is what the appellants want is actually to delay for so long as this application becomes moot. The applicant requires this information for a cuerea criminal, which is time barred as of January the 8th. The other two cuerea criminals become time barred in May 2018. The European Court of Human Rights can at any time ask the applicant to submit the further evidence which he deems supports his application that his human rights have been violated. That delay is the function, and the sole purpose of this motion can be ... First of all, I don't think I've ever seen a motion for an emergency stay without an adjoining motion for an expedited hearing. There is no motion for an expedited hearing by the appellants. In fact, if you look at their Rule 31.2 statement, which was filed on November 30th, they want to submit their brief on the very last day they can. This is not intended to correct some wrong. Judge Costell was entirely right in the way in which he treated Mr. Serrano's letters. They were unsworn. Can you address that? As I look at the statute, a person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege. Our case law is pretty clear that that includes foreign privileges. Explain why at this early stage we should feel confident that there's not a question here of privilege that should slow us down. I think as Judge Carney pointed out exactly, these documents were obtained and prepared for use in U.S. litigation. Spain's litigation against ABS went on in this courthouse for eight years. There was vast discovery that went on. All of the documents that we seek ultimately ended up being either declarations sworn under penalty of perjury of the United That was what they were designed for. That's the evidence, the background evidence of those pleadings are exactly what we're looking for. That they someday later on became part, these witnesses someday later on, three years or in 2013 testified in Spain is irrelevant. Repeat what you just said. You said you're looking for declarations filed by witnesses and what was the other matter? No, there are. The witnesses ultimately signed declarations under penalty of perjury of the U.S. and the United States and they signed expert reports under Rule 26, which were submitted in the ABS litigation. Work product sort of material, attorney notes of interviews, that sort of thing? Correct. Correspondence with their counsel, correspondence with others, their work reports, etc. In answer to your Honor's question, first of all, the touch base test, which we believe would apply, would compel the application of U.S. law if it was indeed applicable. Number two, all of the discussions about what Spanish law applies have been addressed by our counsel and they have established clearly that their privilege is the same as ours. Only that which has been provided by the client is privileged. As to the privilege law, following up on Judge Livingston's earlier question, if we were to agree with you, for example, generally that these were being properly requested for use in a foreign proceeding, would there then, you know, might there still be some documents that you have sought that would be subject to United States privilege and not producible? Would the district court then go on to make a kind of, you know, document by document determination or where do we stand? I don't know that Judge Costello anticipates necessarily a document by document, but for instance, a privilege log was prepared, there were 135 items enumerated on it, and by the way, that refers only to a very small portion of what it is was requested. But they have pointed out 135, we designated 10 for the judge's in-camera review. The judge has agreed to maintain jurisdiction to address issues of privilege that might apply under U.S. law. He has denied the Spanish secrecy law applicability. But a follow-up on your response to Judge Carney, assuming for the argument only that you prevail here and the stay is denied, where does the proceeding stand? Where do we go from there? What's the status of this case? Well, the status of this case is that Judge Costello continues to review documents as they're produced, and they should be produced and produced forthwith. But the appeal would go forward. The appeal goes forward, and it is not moot, because this Court has the ability to render a remedy such as I've identified cases in my brief where, for instance, the Court has said yes, you were granted those documents, but you must now return them, okay? It is not moot. The appeal continues on, and the appeal still has merit. In any event, you would favor an expedited appeal? Your Honor, I would be perfectly happy to have the respondents—I'm sorry, the appellants—have an expedited appeal. I'm perfectly happy to proceed with an expedited appeal. But keeping an emergency stay in place during that period of time, no amount of expedition can take care of my client's immediate concerns, which are the Tissons documents, as well as the European Court of Human Rights documents. This is because of the statute of limitations running in January and then in May. Correct. Well, the Cuadrale Criminale is in January, the one. The other two are in May. The European Court of Human Rights submission, there is just no known date when that will be required. That's entirely up to the court to determine when it is we must make our final submission. So what we're really talking about here, just in scheduling, is the January date, because expedited, you could get documents in January if we were to expedite this. In so far as the other two Cuadrale Criminales are concerned, yes, Your Honor. The concern is the Cushing application, because those documents are actual measurements of the ship in its sunken condition. That information just can't be taken and used. It has to be taken, reviewed, and analyzed by experts before we even know what it says. And in that case, we have, you know, so we need those documents in order to assimilate the information in them to be prepared to provide them to the European Court of Human Rights when they ask for them. Thank you. Thank you. We'll reserve decision. The matter is submitted. We move now to the day calendar. And the first case to be heard is Imran Ali v. Police Officer William Connick. Marilyn Matheson v. Deutsche Bank et al. is on submission at 16-1543 C.V.